**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| | * | **CIVIL ACTION NO. 19-2440** |
| **ADRIATIC MARINE, LLC** | * | |
| | * | **SECTION "D" - MAGISTRATE #4** |
| **VERSUS** | * | |
| | * | **JUDGE VITTER** |
| **ROLAND HARRINGTON** | * | |
| | * | **MAG. JUDGE ROBY** |

**************************************************************************

**MEMORANDUM IN SUPPORT OF**
**MOTION TO STRIKE EXPERT OPINIONS**
**REGARDING PRE-INCIDENT EARNING CAPACITY**

**MAY IT PLEASE THE COURT:**

Plaintiff and Counterclaim Defendant, Adriatic Marine, LLC ("Adriatic Marine"), moves this Honorable Court for an Order striking the expert opinions of Glenn M. Hebert ("Hebert") and G. Randolph Rice ("Rice") with respect to the pre-incident earning capacity of Defendant and Counterclaim Plaintiff, Roland Harrington ("Harrington"). Hebert and Rice utilize an improper pre-incident earning capacity base that lacks any foundational support, thereby running afoul of the requirements of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

**FACTUAL AND PROCEDURAL BACKGROUND**

**1. The alleged incident**

On March 18, 2018, the ADRIATIC, which Adriatic Marine owned and operated, and its crew were working offshore in the Garden Banks Block 128 in the Gulf of Mexico.[1] Harrington

---

[1] R. Doc. 1, at p. 2.

worked as an unlicensed engineer primarily performing routine maintenance and upkeep in the ADRIATIC's engine room.[2]

At midnight on March 18, 2018, Harrington started his daily watch, which ran from midnight to noon.[3] Harrington made his daily rounds and performed his daily tasks, which included wiping down the engines, cleaning the Engine Room, and ordinary daily maintenance.[4] At 9:00 a.m., Harrington began to clean the bilge around the port main engine in the Engine Room.[5] Harrington alleges that he sustained an injury to his lower back when he stepped onto a pipe while trying to exit the bilge.

**2. <u>Procedural background</u>**

On March 18, 2019, Adriatic Marine filed a Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§2201-2202 seeking a Declaration from this Court as to Adriatic Marine's obligations and duties arising from Harrington's alleged accident on March 18, 2018.[6] Specifically, Adriatic Marine sought a declaration that it was not responsible for maintenance or cure and that it was in no way negligent or at fault for the injuries allegedly sustained by Harrington. Thereafter, on April 11, 2019, Harrington filed his Answer and Counterclaim against Adriatic Marine asserting claims of Jones Act negligence, unseaworthiness, and maintenance and cure.[7] Harrington also sought recovery of punitive damages pursuant to *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404 (2009).[8]

---

2 Exhibit 1, Deposition of Roland Harrington, at p. 16.
3 Exhibit 1, at p. 12.
4 *Id.*
5 *Id.*, at pp. 61 - 63.
6 R. Doc. 1.
7 R. Doc. 7.
8 *Id.*, at pp. 9-10.

A bench trial is set to commence on Monday, February 10, 2020. Trial is estimated to last two to three days.[9]

### 3. <u>Hebert's and Rice's expert reports</u>

Harrington provided expert reports from Rice, an expert economist, and Hebert, an expert vocational rehabilitation counsel.[10]

Hebert's expert report identifies Harrington's alleged pre-incident earning capacity as $85,684 per year:

> According to Mr. Harrington's itemized statement of earnings, he earned $15,728 in 2018 working for Adriatic Marine, LLC. This wage correlates to a yearly earning of $85,684.00.
>
> Therefore, based upon Mr. Harrington's demonstrated earning ability, I feel his earning capacity would be $85,684.00 per year.[11]

Hebert states in his report that this calculation is based upon an "itemized statement of earnings" that was provided to him by Harrington's counsel. Hebert does not explain in his report exactly how he calculated this figure, though it appears to be based on the incorrect understanding that Harrington was only paid by Adriatic Marine through February 2018.[12]

Harrington was hired by Adriatic Marine on September 13, 2017.[13] As of March 18, 2018, Harrington was earning $140 a day as an unlicensed engineer, working 28 days on and 14 days off.[14] Harrington was allegedly injured on March 18, 2018, then he continued to work aboard the

---

9 R. Doc. 10, at p. 3.

10 Exhibit 2, Expert Report of Rice; Exhibit 3, Expert Report of Hebert.

11 Exhibit 3, at p. 9.

12 While not articulated in his report, Hebert's calculation of Harrington's alleged pre-incident earning capacity appears to be reached by taking the figure of $15,890 and multiplying it by 5.4. It is entirely unclear how this "5.4" figure was reached since Harrington worked through May 25, 2018, which is almost half the entire 2018 calendar year. Nonetheless, there had been 12 calendar weeks for the 2018 year as of March 18, 2018, which would amount to 23% of the calendar year. Hebert's calculation, by its numbers, appear to account for roughly 9.5 calendar weeks, or 18.5% of the calendar year.

13 Exhibit 4, Declaration of Barrett Grabert.

14 *Id.*

ADRIATIC through April 12, 2018 when his hitch ended; he subsequently returned to the ADRIATIC and worked another full hitch from April 25, 2018 through May 25, 2018. Harrington was paid his full wages during this time, though Hebert apparently failed to take these facts into consideration in forming his opinion.

The Payroll Register for Harrington establishes that, between September 13, 2017 through June 30, 2018, Harrington earned $24,970.[15] Harrington earned $9,080 in 2017 and $15,890 in 2018, which, combined, annualizes to only $36,993 a year, not $85,684, as alleged by Hebert. <u>There is absolutely no evidence or support for Hebert's pre-incident earning capacity figure, as Harrington never earned anything close to $85,684 while working for Adriatic Marine.</u>

Nor did Harrington ever earn anything close to this figure in the years prior to his alleged accident, when he earned the following, according to his own tax records:

- 2014 $38,076
- 2015 $5,199
- 2016 $18,239
- 2017 $25,039 (including $9,080 earned from Adriatic Marine)
- 2018 $20,036 (including $15,890 earned from Adriatic Marine)[16]

Rice utilized Hebert's $85,684 figure to calculate Harrington's past lost wages at $119,900 and future lost wages -- assuming a return to work earning $9,048 - $14,976 a year, working only 24 - 32 hours a week -- at $1,461,400 - $1,598,835.[17] Rice noted in his report that he was relying upon Hebert's pre-incident figure and that he did not do his own calculation of Harrington's

[15] *Id.*
[16] Exhibit 5, Tax Records of Harrington.
[17] Exhibit 2.

alleged pre-incident earning capacity.[18] Again, there is absolutely no evidence or support for using the $85,684 figure for determining pre-incident earning capacity.

## LAW AND ARGUMENT

### 1. Applicable *Daubert* standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See Daubert*, 509 U.S. at 588 (1993); *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006). *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Under *Daubert*, the Court acts as a gate-keeper and conducts a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

With respect to relevancy, the proposed testimony must be relevant "not simply in the way all testimony must be relevant . . . , but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). For an expert witness's testimony to be reliable, Rule 702(b) requires that the expert's opinions be "based on sufficient facts." Put differently, an expert's testimony must "rest[ ] upon a reliable foundation." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1330–31 (5th Cir. 1996). "[E]xpert testimony that relies on 'completely unsubstantiated factual assertions' is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (quoting *Hathaway v. Bazany*, 507 F.3d 312, 319 n.4 (5th Cir. 2007)).

---

18 *Id.*

When the proposed expert testimony "is 'not based upon the facts in the record but on altered facts and speculation designed to bolster [a party's] position,' the trial court should exclude it." *Id.* (quoting *Guillory*, 95 F.3d at 1331). "The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the [R]ule 702 test." *Mathis v. Exxon Corp.*, 302 F.3d 448, 460–61 (5th Cir. 2002) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)); *see also Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). Furthermore, the Court is not bound by the rules of evidence -- except for those with respect to privileges -- when performing its *Daubert* gatekeeping function. *See Daubert*, 509 U.S. at 592 n.10; Fed. R. Evid. 104(a).

**2. <u>Applicable law on opinions regarding earning capacity</u>**

The Fifth Circuit opinion in *Culver v. Slater Boat Co.* ("Culver II"), 722 F.2d 114, 117 (5th Cir. 1983) (*en banc*), governs the calculation of the value of lost wages claims under the Jones Act and general maritime law:

> The calculation of damages suffered . . . by a person whose personal injuries will result in extended future disability . . . involves four steps: estimating the loss of work life resulting from the injury or death, calculating the lost income stream, computing the total damage, and discounting that amount to its present value.

*See Lawrence v. Great Lakes Dredge & Dock Co., L.L.C.*, C.A. No. 17-9775, 2018 U.S. Dist. LEXIS 90722, at *7 (E.D. La. May 31, 2018). "[T]hat calculation of the lost income stream begins with the gross earnings of the injured party at the time of injury." *Culver II*, 722 F.2d at 117; *see also Martinez v. Offshore Specialty Fabricators, Inc.*, 481 Fed.App'x 942, 950 (5th Cir. 2012) (noting that *Culver II* instructed "that lost wages should be calculated based upon the plaintiff's gross earnings at the time of his injury"); *Hernandez v. M/V Rajaan*, 841 F.2d 582, 587-88 (5th Cir. 1988) ("*Culver II* requires the court to use the plaintiff's gross earnings at the time of the injury.").

**3. <u>Rice's and Hebert's pre-incident earning capacity is entirely unsupported by any evidence.</u>**

Hebert's and Rice's opinions run afoul of *Daubert* and Rule 702 as there is no factual basis to opine that Harrington's pre-incident earning capacity was $85,684.

Harrington did not earn anything close to this amount while working for Adriatic Marine, nor was he scheduled to earn such amount. As of March 18, 2018, Harrington was earning $140 a day as an unlicensed engineer, working 28 days on and 14 days off.[19] During his entire employment with Adriatic Marine (from September 2017 through June 2018), Harrington only earned $24,970.[20] As established above, Hebert's and Rice's opinions regarding pre-incident earning capacity are completely unsubstantiated factual assertions, which, by their nature, are inadmissible. *See Moore*, 547 F. App'x at 515 (quoting *Hathaway*, 507 F.3d at 319 n.4).

Not only do Hebert's and Rice's opinions run afoul of *Daubert* and Rule 702, but they also do not conform to the standards articulated in *Culver II*. Hebert's and Rice's opinions do not contemplate Harrington's gross earnings at the time of his alleged injury. Rather, they are based on a completely fictionalized figure.

Further, while Harrington may argue that this issue is best left for cross-examination, that position lacks support considering the completely unreliable basis for Hebert's and Rice's opinions in the first place. The Court should not defer ruling in favor of cross-examination when the factual foundation for such opinions is so lacking. Hebert's and Rice's opinions would not assist in determining any issue of fact because there is no underlying factual support for these opinions to begin with. Rather, Hebert's and Rice's opinions regarding pre-incident earning capacity are nothing more than altered facts and speculation, designed to bolster Harrington's argument

---

19 Exhibit 4.
20 *Id*.

regarding wage loss. As such, they should be excluded. *See id.* (quoting *Guillory*, 95 F.3d at 1331). It is Harrington's burden to establish that Hebert's and Rice's opinions satisfy Rule 702. *See Mathis*, 302 F.3d at 460–61. He cannot do so because there is not a single fact that would support the position that Harrington's pre-incident earning capacity was $85,684.

Accordingly, Hebert's and Rice's opinions should be excluded.

**CONCLUSION**

For the reasons noted above, the Court should strike entirely Hebert's and Rice's opinions with respect to Harrington's alleged pre-incident earning capacity and not permit them to testify at trial regarding this factually-unsupported figure.

Respectfully submitted,

JONES WALKER, LLP

*/s/ Hansford P. Wogan*

LANCE M. SANNINO (#29409)
WILLIAM C. BALDWIN (#31613)
HANSFORD P. WOGAN (#34825)
Jones Walker LLP
201 St. Charles Avenue, Suite 4800
New Orleans, LA 70170
Telephone: (504) 582-8000
Fax: (504) 582-8164
lsannino@joneswalker.com
wbaldwin@joneswalker.com
fwogan@joneswalker.com

***Attorneys for Adriatic Marine, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of December 2019 a copy of the above and foregoing has been forwarded to all parties and counsel of record via the Court's ECF filing system, US Mail, email and/or facsimile.

*/s/ Hansford P. Wogan*