# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

ADRIATIC MARINE, LLC        CIVIL ACTION

VERSUS        NO. 19-2440-WBV-KWR

ROLAND HARRINGTON        SECTION: D (4)

## ORDER AND REASONS

Before the Court is a Motion to Strike Expert Opinions Regarding Pre-Incident Earning Capacity, filed by Adriatic Marine, LLC ("Adriatic Marine").[1] Defendant opposes the Motion to Strike,[2] and Adriatic Marine has filed a Reply.[3] Also before the Court is Defendant's Motion to Supplement Expert Reports of Glenn Hebert and G. Randolph Rice, Ph.D.[4] Adriatic Marine opposes the Motion to Supplement.[5]

After careful consideration of the parties' memoranda and the applicable law, the Motion to Supplement is **DENIED** and the Motion to Strike is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is an action for declaratory judgment regarding maintenance and cure benefits requested by an employee allegedly injured while working aboard a vessel. Roland Harrington ("Defendant"), claims that he was injured on or about March 18, 2018, while working as an unlicensed engineer for Adriatic Marine, LLC ("Adriatic

---

[1] R. Doc. 28.
[2] R. Doc. 29.
[3] R. Doc. 43.
[4] R. Doc. 51.
[5] R. Doc. 53.

Marine"), aboard the M/V ADRIATIC.[6]  Defendant alleges that after cleaning inside the vessel's bilge around the port main engine, he stepped out of the bilge and lost his footing, causing him to fall and hit his lower back on an angle iron.[7]  No one witnessed Defendant's alleged accident.  Defendant did not report the injury until March 26, 2018, which is when he completed an Incident Report.  The Incident Report provides that the injury occurred at 9:00 a.m. on March 18, 2018.[8]

Adriatic Marine claims that on June 12, 2018, it received correspondence from Defendant's counsel, asserting that Defendant had been injured aboard the M/V ADRIATIC on March 18, 2018, and requesting maintenance and cure benefits.[9] Adriatic Marine alleges that it immediately initiated maintenance and cure benefits in good faith, and began an investigation into the alleged incident.[10]  As part of its investigation, Adriatic Marine requested that Defendant undergo an independent medical examination by Dr. Ralph Katz, who, after performing the IME, disagreed with Dr. Neil Romero's request for approval of a 2-level decompression and fusion surgical procedure.  Based upon Dr. Katz's opinion, Adriatic Marine denied the requested surgical procedure.[11]

After conducting its investigation into the alleged accident, Adriatic Marine contends that Defendant was not involved in an accident aboard the M/V ADRIATIC on March 18, 2018, and/or that Defendant did not sustain any injury while in service

---

[6] R. Doc. 1 at ¶ 6.
[7] *Id*. at ¶ 8.
[8] R. Doc. 26-7.
[9] R. Doc. 1 at ¶ 14.
[10] *Id*. at ¶ 15.
[11] *Id*. at ¶ 17.

of any Adriatic Marine vessel.[12]  Adriatic Marine further alleges that Defendant willfully and knowingly concealed his pre-existing medical conditions and/or failed to disclose them to Adriatic Marine, including, but not limited to, prior issues and injuries to his back.[13]  As such, Adriatic Marine claims that Defendant is not entitled to maintenance and cure benefits.[14]  On March 18, 2019, Adriatic Marine filed a Complaint for Declaratory Judgment in this Court, seeking a declaration that it is not responsible for maintenance or cure benefits or, conversely, a determination regarding past and future liability for maintenance and cure generally.[15]

On April 11, 2019, Defendant filed an Answer and Counterclaim to Adriatic Marine's Complaint, asserting that his accident and injuries were caused solely by Adriatic Marine's negligence and/or the unseaworthiness of the vessel.[16]  Defendant also asserted a claim for maintenance and cure benefits from the date of his injury until he reaches full recovery or maximum medical improvement.[17]  Defendant claims that Adriatic Marine is liable to him under the Jones Act, 46 U.S.C. § 30104, because Defendant was performing his duties as a seaman aboard the M/V ADRIATIC at the time of the accident.[18]  Defendant also asserted a claim for punitive damages.[19]

---

[12] *Id.* at ¶ 18.
[13] *Id.* at ¶ 19.
[14] *Id.* (citing *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166 (5th Cir. 2005); *Jauch v. Nautical Services, Inc.*, 470 F.3d 207 (5th Cir. 2006); *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547 (5th Cir. 1968)).
[15] R. Doc. 1 at ¶ 22.
[16] R. Doc. 7 at pp. 6-9.
[17] *Id.* at p. 9, ¶ IX.
[18] *Id.* at p. 6, ¶ III.
[19] *Id.* at pp. 9-10, ¶ XI.

**A. Adriatic Marine's Motion to Strike Expert Opinions**

On December 30, 2019, Adriatic Marine filed the instant Motion to Strike Expert Opinions Regarding Pre-Incident Earning Capacity (the "Motion to Strike"), asking the Court to strike the expert opinions of Defendant's experts, Glenn M. Hebert and G. Randolph Rice, regarding Defendant's pre-incident earning capacity.[20] Adriatic Marine asserts that the Court should preclude Hebert and Rice from testifying at trial regarding Defendant's pre-incident earning capacity because their opinions are based upon an improper earning capacity base that lacks any foundational support, which runs afoul of Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Adriatic Marine explains that Defendant provided it with an expert report from Hebert, an expert economist, in which he identifies Defendant's pre-incident earning capacity as $84,684 per year.[21] Adriatic Marine points out that Hebert specifically states in his report that this calculation is based upon Defendant's "itemized statement of earnings," which were provided to him by Defendant's counsel. Adriatic Marine asserts, however, that Hebert does not explain in his report exactly how he calculated this figure, but that it appears to be based upon the incorrect understanding that Defendant was only paid by Adriatic Marine through February 2018. Adriatic Marine notes that it appears Hebert took the figure of $15,890, which is the amount Defendant earned from Adriatic Marine in 2018, and multiplied it by

---

[20] R. Doc. 28.
[21] R. Doc. 28-1 at p. 3 (*citing* R. Doc. 28-4 at p. 9).

5.4, but that it is entirely unclear how Hebert came up with that figure, since Defendant worked for Adriatic Marine for almost six months in 2018.[22]

Adriatic Marine contends that it hired Defendant on September 13, 2017, and that as of March 18, 2018, he was earning $140 per day as an unlicensed engineer, working 28 days on and 14 days off.[23]  Adriatic Marine asserts that the Payroll Register for Defendant shows that he earned $9,080 in 2017 and $15,890 in 2018, "which, combined, annualizes to only $36,993 a year, not $85,684, as alleged by Hebert."[24]  Adriatic Marine argues that there is no evidence or support for Hebert's pre-incident earning capacity figure, since Defendant never earned an amount close to $85,684 while working for Adriatic Marine.  Adriatic Marine also points out that Defendant did not earn an amount approaching $85,684 in the years before his alleged accident, as his tax records from 2014 to 2018 show that his annual earnings ranged from $5,199 to $38,076.[25]  Adriatic Marine further asserts that G. Randolph Rice, Defendant's expert economist, used Hebert's $85,684 figure as the basis to calculate Defendant's past lost wages at $119,900 and future lost wages at $1,461,400 to $1,598,835.[26]  Adriatic Marine points out that Rice noted in his report that he was relying upon Hebert's pre-incident figure and that he did not perform his own calculation of Defendant's alleged pre-incident earning capacity.[27]

---

[22] R. Doc. 28-1 at p. 3, n.12.
[23] R. Doc. 28-1 at p. 3 (*citing* R. Doc. 28-5).
[24] R. Doc. 28-1 at p. 4 (*citing* R. Doc. 28-5).
[25] R. Doc. 28-1 at p. 4 (*citing* R. Doc. 28-6).
[26] R. Doc. 28-1 at p. 4 (*citing* R. Doc. 28-3).
[27] R. Doc. 28-1 at pp. 4-5 (*citing* R. Doc. 28-3).

Adriatic Marine argues that because the pre-incident earning capacity relied upon by Rice and Hebert is unsupported by any evidence, their expert opinions are not reliable under *Daubert* and, therefore, are not admissible under Fed. R. Evid. 702.[28]  Adriatic Marine also argues that the opinions of Rice and Hebert do not conform to the standards articulated by the Fifth Circuit in *Culver v. Slater Boat Co.*, regarding the calculation of lost wages claims under the Jones Act and general maritime law because their opinions do not contemplate Defendant's gross earnings at the time of his alleged injury.[29]  As such, Adriatic Marine asserts that the Court should strike the opinions of Hebert and Rice regarding Defendant's pre-incident earning capacity, and preclude them from testifying at trial regarding same.

Defendant opposes the Motion to Strike, arguing that he should be allowed to provide supplemental expert reports based upon re-calculations using the correct earning history of $36,993.[30]  Defendant concedes that his expert mistakenly used the wrong basis in his calculations and that his second expert then relied on that inaccurate information.  Defendant, however, asserts that Adriatic Marine "seeks to take advantage of Hebert's miscalculation to Harrington's detriment" by asking the Court to strike the expert opinions, which would impede Defendant's ability to make any claim for past wage loss or future diminution of earning capacity.[31]  Defendant claims that the Motion to Strike was the first time that the miscalculation was called to the attention of his counsel, so he has not had an opportunity to ask Hebert or Rice

---

[28] R. Doc. 28-1 at pp. 7-8.
[29] R. Doc. 28-1 at pp. 6-7 (citing *Culver*, 722 F.2d 114, 117 (5th Cir. 1983)).
[30] R. Doc. 29.
[31] *Id*. at p. 1.

to correct the error.[32]  Defendant, however, asserts that the corrections can be made with a few simple re-calculations.  Defendant claims that if the $36,993 figure is used, it would reduce his past wage loss from $119,900 to approximately $47,384.82, and reduce his future losses from $1,818,504 to approximately $679,347.50.[33]

Defendant argues that under *LeBeouf v. Manning*, this Court should consider the following four factors in determining whether to allow supplementation of his expert reports: (1) the moving party's explanation; (2) the importance of the relief requested; (3) potential prejudice in granting the relief; and (4) the availability of a continuance to cure such prejudice.[34]  Defendant argues that all four factors favor allowing supplementation in this case, as Defendant is innocent in the miscalculation, Adriatic Marine would not be prejudiced by allowing the recalculation because it would reduce Defendant's damages and Adriatic Marine has its own expert to counter the miscalculations, the relief sought is important because it allows accuracy in the claimed damages, and a continuance would not be necessary because the miscalculation could be corrected very quickly without any additional documentation or delay.[35]  Defendant further asserts that Adriatic Marine seeks to "in effect hamstring Harrington by disallowing any evidence of his pre-injury earning capacity," and that Adriatic Marine's request is "patently unfair and penalizes Harrington for a simply [sic] miscalculation by one expert witness which was relied

---

[32] *Id.*
[33] *Id.* at pp. 1-2.
[34] *Id.* at p. 2 (citing *LeBeouf*, Civ. A. No. 12-2583, 2016 WL 692051, at *1 (E.D. La. Feb. 22, 2016)).
[35] R. Doc. 29 at pp. 2-3.

upon in another expert's calculations."[36]  Defendant maintains that its experts'
miscalculations are "unfortunate, but easily curable if the Court grants leave to allow
the untimely supplementation of the reports to correct the error pointed out by
Adriatic."[37]

In response, Adriatic Marine points out that while Defendant describes the
miscalculation by Hebert and Rice, which inflated Defendant's wage loss claim by
more than $1.1 million, as an "unfortunate error," Defendant does not offer any
explanation as to how or why their miscalculation was so glaring in the first place.[38]
Adriatic Marine argues that Defendant should not be allowed to correct the
miscalculation because the expert reports of Hebert and Rice are dated October 29,
2019 and November 22, 2019, respectively, a month and a week, respectively, before
Defendant's November 29, 2019 expert report deadline.  Adriatic Marine asserts that
Defendant's earning capacity information was clearly available to Hebert and Rice
before the issuance of their reports, so it is not "new" information that was otherwise
unavailable to them prior to the expert report deadline.[39]  Adriatic Marine argues
that courts have routinely rejected untimely supplemental expert testimony where
the opinions are based upon information that was available prior to the deadline for
expert disclosures.[40]  Adriatic Marine also argues that the Court should exclude the
expert testimony of Hebert and Rice because it is based on "altered facts and

[36] *Id.*
[37] *Id.* at p. 3.
[38] R. Doc. 43 at p. 1.
[39] *Id.* at p. 2.
[40] *Id.* (citing *Lampe Berger USA, Inc. v. Scentier, Inc.*, Civ. A. No. 04-354, 2008 WL 3386716, at *2
(M.D. La. Aug. 8, 2008); *Walton v. Enter. Marine Servs., LLC*, Civ. A. No. 14-2468, 2016 WL 2956815,
at *2 (E.D. La. May 23, 2016)).

speculation designed to bolster [a party's] position."[41]  Adriatic Marine further argues that Defendant's reliance upon *LeBeouf* is curious, since the court in that case refused to allow supplementation.[42]  Adriatic Marine maintains that Defendant has not shown good cause to supplement his expert reports.

### B. Defendant's Motion to Supplement Expert Reports

Although trial in this matter is set for March 4, 2020,[43] the trial was originally scheduled for February 10, 2020, with a final pretrial conference set for January 27, 2020.[44]  Before the trial date was continued, the Court held the final pretrial conference on January 27, 2020, during which the Court discussed with counsel the pending Motion to Strike.[45]  After questioning defense counsel about why they had not filed a motion to supplement their expert reports at any time prior to the pretrial conference, when the record reveals that the Motion to Strike was filed almost one month prior to the pretrial conference, the Court gave Defendant until January 29, 2020, to file any motion to supplement his expert reports and set a deadline of January 31, 2020, for Adriatic Marine to file an opposition to any such motion.[46]

Pursuant to the Court's January 27th Order, Defendant filed a Motion to Supplement Expert Reports of Glenn Hebert and G. Randolph Rice, Ph.D. on January 29, 2020.[47]  The Motion to Supplement is identical to Defendant's opposition to the

---

[41] R. Doc. 43 at pp. 2-3 (quoting *Moore v. Int'l Paint, LLC*, 547 Fed.Appx. 513, 515 (5th Cir. 2013)) (internal quotation marks omitted).

[42] R. Doc. 43 at p. 3 (citing *LeBeouf v. Manning*, Civ. A. No. 12-2583, 2016 WL 692051 (E.D. La. Feb. 22, 2016)).

[43] R. Doc. 70.

[44] R. Doc. 10.

[45] R. Doc. 49.

[46] *Id*.

[47] R. Doc. 51.

Motion to Strike. Defendant again complains that Adriatic Marine has "sought to take advantage of Hebert's miscalculation to Harrington's detriment," and that Adriatic Marine "seeks to in effect hamstring Harrington by disallowing any evidence of his pre-injury earning capacity which would, in effect, deny him the ability to seek recovery for any past or future wage loss."[48] Defendant also cites *LeBeouf v. Manning*, and again argues that good cause exists to allow supplementation of his expert reports because (1) Defendant is innocent in the miscalculation; (2) Adriatic Marine would not be prejudiced by the miscalculation, which would lower Defendant's alleged damages, and because Adriatic Marine has an expert to counter the supplemental report; (3) the relief sought is important because it allows accuracy in the claimed damages; and (4) a continuance is not necessary because the miscalculation could be corrected very quickly without any additional documentation or delay.[49] Defendant maintains that his experts' miscalculations are unfortunate, but easily curable if the Court grants leave to allow the untimely supplementation of the reports to correct the error pointed out by Adriatic Marine. As such, Defendant asks the Court to grant him leave to correct the miscalculation.

Adriatic Marine opposes the Motion to Supplement, maintaining that Defendant has not shown good cause to supplement his expert reports.[50] Adriatic Marine points out that in seeking leave to file the Motion to Supplement, Defendant asserts that he did not notice the error in the expert reports prior to the December

---

[48] R. Doc. 51-1 at pp. 2-3.
[49] R. Doc. 51-1 at p. 3.
[50] R. Doc. 53.

24, 2019 pretrial motion deadline.[51]  Adriatic Marine asserts that the expert reports are dated October 29, 2019 and November 22, 2019, and that Defendant had over a month to catch the $50,000 error in Hebert's calculation, which inflated Defendant's alleged lost wage claim by more than $1.1 million.[52]  Adriatic Marine maintains that information regarding Defendant's pre-incident earning capacity was readily available to Rice and Hebert before they prepared their reports, and that courts have routinely rejected untimely supplemental expert testimony where the opinions are based upon information available prior to the deadline for expert disclosures.[53]  Given the applicable law, Defendant's failure to explain the basis of Hebert's and Rice's error, and the fact that trial was set to begin in less than two weeks from the date of its Opposition brief,[54] Adriatic Marine argues that Defendant has not shown good cause to supplement his expert reports and, as such, the Motion to Supplement should be denied.

## II.   LEGAL STANDARD

When expert testimony is challenged, the party seeking to present the testimony has the burden of proving, by a preponderance of the evidence, that the testimony satisfies Federal Rule of Evidence 702.[55]  Rule 702, which governs the

---

[51] *Id*. at p. 1 (*citing* R. Doc. 47-1 at p. 1).

[52] R. Doc. 53 at p. 1, n. 1.

[53] *Id*. at pp. 1-2 (citing *Lampe Berger USA, Inc. v. Scentier, Inc.*, Civ. A. No. 04-354, 2008 WL 3386716, at *2 (M.D. La. Aug. 8, 2008)).

[54] At the time Adriatic Marine filed its Opposition brief, trial was set for February 10, 2020.  On February 5, 2020, the Court continued the trial until March 4, 2020.  (R. Doc. 70).

[55] *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

admissibility of expert testimony,[56] provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.[57]

The current version of Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[58] and *Kumho Tire Co. v. Carmichael*.[59] The threshold inquiry in determining whether an individual may offer expert testimony under Rule 702 is whether the individual possesses the requisite qualifications to render an opinion on a particular subject matter.[60] After defining the permissible scope of the expert's testimony, the court must determine whether the opinions are reliable and relevant before they can be admitted.[61] The purpose of *Daubert* is "to ensure that only reliable and relevant expert testimony is presented to the jury."[62] Thus, "Most of the safeguards provided for in *Daubert* are not as essential in a case

---

[56] *In re Chinese Manufactured Drywall Products Liability Litigation*, Civ. A. No. 09-6687, 2010 WL 8368083, at *2 (E.D. La. Feb. 17, 2010).

[57] Fed. R. Evid. 702.

[58] 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

[59] 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

[60] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 798 (E.D. La. 2011).

[61] *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citing *Daubert*, 509 U.S. at 592-93, 113 S.Ct. 2786).

[62] *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 506 (5th Cir. 1999) (superseded by statute on other grounds) (citing *Daubert*, 509 U.S. at 590-93, 113 S.Ct. 2786).

such as this where a district judge sits as the trier of fact in place of a jury."[63]
Nonetheless, as the "gatekeeper" of expert testimony, the trial court enjoys broad
discretion in determining admissibility.[64]

## III.  ANALYSIS

### A. Expert testimony from Rice and Hebert regarding Defendant's pre-incident earning capacity and past and future lost wages is inadmissible under *Daubert* and Fed. R. Evid. 702.

The sole issue before the Court is whether the Court should strike the expert
opinions of Defendant's experts, Glenn M. Hebert and G. Randolph Rice, regarding
Defendant's pre-incident earning capacity and his alleged past and future lost wages,
or allow Defendant to supplement the expert reports to correct certain
miscalculations regarding those figures. There is no dispute in this case that the
expert reports of Hebert and Rice, dated October 29, 2019 and November 22, 2019,
respectively, contain inaccurate information. The parties agree that Hebert's
conclusion that Defendant earned an annual salary of $85,684 at the time of his
alleged injury is a miscalculation.[65] As Adriatic Marine points out, Hebert states in
his report that this calculation is based upon "Mr. Harrington's itemized statement
of earnings," which were "forwarded to my office by [defense counsel's] office."[66]
Based upon his review of Defendant's itemized statement of earnings, Hebert
concluded that Defendant "earned $15,728.00 in 2018 working for Adriatic Marine,

---

[63] *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).
[64] *Wellogix, Inc. v. Accenture, LLP*, 716 F.3d 867, 881 (5th Cir. 2013).
[65] R. Doc. 28-1 at pp. 3-4; R. Doc. 29 at p. 1.
[66] R. Doc. 28-4 at pp. 1, 9.

LLC. This wage correlates to a yearly earning of $85,684.00."[67] No further explanation is provided in the report regarding how Hebert calculated Defendant's annual salary for 2018. Relying upon Hebert's calculation, Rice calculated Defendant's past and future lost wages, using $85,684 as Defendant's earning capacity at the time of his alleged injury.[68]

Adriatic Marine has submitted copies of Defendant's tax records from the years 2014 through 2018, which show that Defendant did not earn an annual salary anywhere near $85,684 during the five years preceding his alleged injury in 2018.[69] In fact, both of Defendant's expert reports reflect that each expert was in possession of Defendant's tax returns for the years 2014 through 2018.[70] Adriatic Marine also submitted copies of Defendant employment records, which show that Defendant earned a total of $24,970 between September 13, 2017 and June 30, 2018, while working for Adriatic Marine.[71] Adriatic Marine asserts that Defendant "earned $9,080 in 2017 and $15,890 in 2018, which, combined, annualizes to only $36,993 a year, not $85,684, as alleged by Hebert."[72] Although it is unclear to the Court how Adriatic Marine calculated Defendant's annual salary as $36,993, Defendant agrees that his "true pre-injury earning capacity based upon his earnings history is really $36,993."[73] Thus, the parties agree that Hebert's calculation of Defendant's pre-incident earning capacity as $85,684 is completely unsubstantiated. Because Rice

---

[67] *Id.* at p. 9.
[68] R. Doc. 28-3 at p. 1.
[69] R. Doc. 28-6.
[70] *See* R. Doc. 28-3 at p.1; R. Doc. 28-4 at p.1.
[71] R. Doc. 28-5.
[72] R. Doc. 28-1 at p. 4.
[73] R. Doc. 29 at p. 1.

based his calculation of Defendant's past and future lost wages upon Hebert's calculation of Defendant's pre-incident earning capacity, his calculations are also unsubstantiated. Accordingly, the Court finds that the expert testimony of Hebert and Rice regarding Defendant's pre-incident earning capacity and his past and future lost wages is neither reliable nor relevant under Fed. R. Evid. 702 and *Daubert*, since their opinions are not based upon sufficient facts and would not assist the trier of fact in understanding or determining a fact in issue.[74]

Additionally, the Fifth Circuit has held that, "expert testimony that relies on 'completely unsubstantiated factual assertions' is inadmissible."[75] According to the Fifth Circuit, "When an expert's testimony is 'not based upon the facts in the record but on altered facts and speculation designed to bolster [a party's position],' the trial court should exclude it."[76] Here, because the expert testimony of Hebert and Rice regarding Defendant's pre-incident earning capacity and his past and future lost wages would be based upon calculations that are completely unsubstantiated by any facts or evidence in the record, the Court finds that the testimony is inadmissible at trial. While Defendant seeks to downplay the experts' miscalculations by merely referring to them as "unfortunate,"[77] the Court finds it compelling that, as Adriatic Marine points out, the miscalculations by Hebert and Rice inflated Defendant's wage

---

[74] Fed. R. Evid. 702.

[75] *Moore v. International Paint, LLC*, 547 Fed.Appx. 513, 515 (5th Cir. 2013) (quoting *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007)).

[76] *Moore*, 547 Fed.Appx. at 515 (quoting *Guillory v. Domtar Indus.*, 95 F.3d 1320, 1331 (5th Cir. 1996)).

[77] R. Doc. 29 at p. 3.

loss claim by more than $1.1 million.[78]  Accordingly, those expert opinions on those topics are inadmissible at trial.

## B. Defendant has not met his burden of proving that supplementing the expert reports is appropriate under Fed. R. Civ. P. 26 & 37.

In lieu of striking their expert opinions, Defendant has asked to Court to allow Hebert and Rice to provide supplemental expert reports with the correct calculation of Defendant's pre-incident earning capacity and past and future lost wages.[79] Federal Rule of Civil Procedure 26(e) allows for the supplementation of a disclosure, such as an expert report, "if the party learns that in some material respect the disclosure or response is incomplete or incorrect."[80]  However, expert reports may only be supplemented in limited circumstances, specifically where supplementation "means correcting inaccuracies, or filling the interstices of an incomplete report based on information *that was not available at the time of the initial disclosure.*"[81]  "If an expert's report does not rely [on] any information that was previously unknown or unavailable to him, it is not an appropriate supplemental report under Rule 26."[82]

Here, it is undisputed that Defendant is not seeking to supplement his experts' reports to correct inaccuracies based upon information that was not available at the time the original reports were prepared.  Defendant does not make any claim that the information was not available to him at the time the expert reports were drafted

---

[78] R. Doc. 43 at p. 1.
[79] R. Doc. 51.
[80] Fed. R. Civ. P. 26(e).
[81] *Walton v. Enterprise Marine Services, LLC*, Civ. A. No. 14-2468, at *2 (E.D. La. May 23, 2016) (quoting *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 421 (S.D. Tex. 2012)) (internal quotation marks omitted) (emphasis added in *Diaz*).
[82] *Walton*, Civ. A. No. 14-2468, at*2 (quoting *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F.Supp.2d 269, 278 (S.D.N.Y. 2011)) (internal quotation marks omitted).

or due. Instead, Defendant seeks to supplement the reports to correct the "unfortunate miscalculations" made by Hebert and Rice regarding Defendant's pre-incident earning capacity, which went unnoticed by defense counsel until Adriatic Marine filed the instant Motion to Strike.[83]  The Court finds it compelling, however, that Defendant has offered no explanation whatsoever for these miscalculations in either his Motion to Supplement or his Opposition brief to Adriatic Marine's Motion to Strike.[84]  As Adriatic Marine points out,[85] federal courts have routinely rejected untimely "supplemental" expert testimony where the opinions are based upon information available prior to the deadline for expert disclosures.[86]  Accordingly, because Defendant does not seek to supplement his expert reports based upon newly discovered evidence, Defendant has not shown that supplementation is appropriate under Fed. R. Civ. P. 26.

The Court further finds that Defendant has not shown that good cause exists to allow the supplementation of his expert reports after the Court's deadline for providing expert reports.  As this Court has previously explained, "The failure to meet a court-ordered deadline for supplementing an expert report is no trifling matter."[87]  Pursuant to Fed. R. Civ. P. 37(c), if a party fails to provide information required by Rule 26(a) or (e), the party is not allowed to use that information at trial unless the

---

[83] R. Doc. 51-1 at p. 3.
[84] *See* R. Docs. 29, 51.
[85] R. Doc. 43 at p. 2; R. Doc. 53 at p. 2.
[86] *Lampe Berger USA, Inc. v. Scentier, Inc.*, Civ. A. No. 04-354, 2008 WL 3386716, at *2 (M.D. La. Aug. 8, 2008) (collecting cases).
[87] *Red Dot Bldgs. v. Jacobs Technology, Inc.*, Civ. A. No. 11-1142, 2012 WL 2061904, at *3 (E.D. La. June 7, 2012).

failure was "substantially justified" or is "harmless."[88]   Thus, exclusion of the evidence is mandatory and automatic unless the party demonstrates substantial justification or harmlessness.[89]   Here, the only justification provided for Defendant's failure to timely supplement his expert reports is Adriatic Marine's failure to point out the errors in the expert reports to the Defendant sooner.   The Court is deeply troubled by Defendant's attempt to blame Adriatic Marine for his own counsel's failure to review the expert reports to ensure their accuracy, and for insinuating that Adriatic Marine had a duty to bring the error to Defendant's attention sooner. Specifically, Defendant asserts that, "the receipt of Adriatic's motion was the first time this miscalculation *was called to the attention of Harrington's counsel*,"[90] and that, "Adriatic has called the miscalculation to the attention of Harrington for the first time through filing their motion."[91]

The Court notes that Defendant simultaneously faults Adriatic Marine for pointing out the errors in Defendant's expert reports, asserting that Adriatic Marine "seeks to take advantage of Hebert's miscalculation to Harrington's detriment,"[92] and, "seeks to in effect hamstring Harrington by disallowing any evidence of his pre-injury earning capacity which would, in effect, deny him the ability to seek recovery for any past or future wage loss."[93]   Defendant further complains that Adriatic Marine's request to strike the expert opinions is "patently unfair and penalizes

---

[88] Fed. R. Civ. P. 37(c)(1); *LeBeouf v. Manning*, Civ. A. No. 12-2583, 2016 WL 692051, at *1 (E.D. La. Feb. 22, 2016); *Lampe Berger USA, Inc.*, Civ. A. No. 04-354, 2008 WL 3386716, at *2.
[89] *See Caskey v. Man Roland, Inc.*, 83 F.3d 418 (5th Cir. 1996).
[90] R. Doc. 29 at p. 1 (emphasis added).
[91] R. Doc. 29 at p. 2; R. Doc. 51-1 at p. 3.
[92] R. Doc. 29 at p. 1; R. Doc. 51-1 at p. 1.
[93] R. Doc. 29 at pp. 2-3; R. Doc. 51-1 at p. 3.

Harrington for a simply [sic] miscalculation by one expert which was relied upon by another expert's calculation."[94]  It is evident to the Court that Defendant has refused to acknowledge or accept any responsibility for the errors made by his experts or his failure to notice those errors.  Further, Defendant has failed to show that his failure to timely move to supplement his expert reports is substantially justified.  The Court must, therefore, determine whether Defendant's failure to timely supplement the expert report constitutes harmless error.

In performing a Rule 37(c)(1) harmless error analysis, courts must consider four factors: (1) the explanation for the party's failure to disclose; (2) the importance of the evidence; (3) the prejudice to the opposing party of including the evidence; and (4) the possibility of curing such prejudice by granting a continuance.[95]  All four factors weigh against granting Defendant's Motion to Supplement in this case.  The Court has already determined that Defendant has not provided any reasonable explanation for his failure to timely supplement his expert reports.  Turning to the second factor, the importance of the evidence, while the supplemental opinions of Rice and Hebert regarding Defendant's pre-incident earning capacity and his past and future lost wages are important in this case, the importance of any supplemental opinions "cannot singularly override the enforcement of local rules and scheduling orders."[96]  Additionally, Defendant can prove his pre-injury earning capacity and lost

---

[94] R. Doc. 29 at p. 3.

[95] *LeBeouf*, Civ. A. No. 12-2583, 2016 WL 692051, at *1 (quoting *Miles v. HSC-Hopson Servs. Co., Inc.*, 625 Fed.Appx. 636, 639 (5th Cir. 2015)) (quotation marks omitted).

[96] *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 509 (5th Cir. 1990), *superseded by statute on other grounds,* as noted in *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002).

wages by offering his own testimony and other evidence, including his tax returns and payroll records, and then making a simple arithmetic calculation.[97]  Thus, the first two factors weigh against allowing the supplemental reports.

Regarding the third factor, the Court finds that allowing Defendant to file supplemental expert reports at this late stage of the litigation and on the eve of trial would substantially prejudice Adriatic Marine's case.  "The underlying purpose of an expert reports is to notify opposing parties of the scope and content of the expert's proposed testimony."[98]  Adriatic Marine will be prejudiced by the late supplemental reports because its own expert prepared a report based upon the opinions contained in Defendant's original expert reports, and has not had an opportunity to address any new calculations made by Rice and Hebert regarding Defendant's lost wages or pre-incident earning capacity.   Additionally, Defendant filed the instant Motion to Supplement on January 29, 2020, two months after his November 29, 2019 expert report deadline, eight business days before the original trial date of February 10, 2020, and only when the Court offered the Defendant a further opportunity to do so. Although Defendant claims he was first put on notice of the errors in his expert reports when Adriatic Marine filed its Motion to Strike on December 30, 2019,[99] Defendant made no effort to correct these errors with until *after* his counsel was pressed on the issue during the final pretrial conference held on January 28, 2020.[100] At a subsequent status conference held on February 5, 2020, this Court continued the

[97] *See LeBeouf*, Civ. A. No. 12-2583, 2016 WL 692051, at *2.
[98] *Matthews v. Allstate Ins. Co.*, 731 F.Supp.2d 552, 559 (E.D. La. 2010) (citation omitted).
[99] R. Docs. 29 & 51.  *See* R. Doc. 28.
[100] R. Doc. 49.

trial until March 4, 2020.[101]  Even with the new trial date, however, Adriatic Marine would be prejudiced by Defendant's late supplemental expert reports because Adriatic Marine would not have an opportunity to obtain corresponding supplemental reports from its own experts or to depose Defendant's experts on their new calculations in preparation for their trial testimony.  The Court will also be inconvenienced by continuing this trial.

Turning to the fourth factor, while a second trial continuance could alleviate the prejudice caused by Defendant's supplemental expert reports, Adriatic Marine opposes a continuance and, as the Fifth Circuit has recognized, delaying a trial is "never . . . ideal."[102]  The Court also finds that a trial continuance is not warranted in light of Defendant's lengthy delay in filing the instant Motion to Supplement. Granting a continuance under these circumstances would neither punish Defendant for his conduct, nor deter similar behavior in the future.[103]  Instead, it would merely condone Defendant's failure to comply with the Scheduling Order deadlines, "which is behavior this Court is not eager to encourage."[104]  Thus, the third and fourth factors also weigh against allowing supplemental expert reports.

Because the Court finds that Defendant's untimely request to supplement the expert reports of Rice and Hebert is neither substantially justified nor harmless,

---

[101] R. Doc. 70.
[102] *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1990).
[103] *LeBeouf v. Manning*, Civ. A. No. 12-2583, 2016 WL 692051, at *2 (E.D. La. Feb. 22, 2016) (quoting *Harmon v. Ga. Gulf Lake Charles LLC*, 476 Fed.Appx. 31, 36 (5th Cir. 2012)) (quotation marks omitted).
[104] *Red Dot Bldgs. v. Jacobs Technology, Inc.*, Civ. A. No. 11-1142, 2012 WL 2061904, at *4 (E.D. La. June 7, 2012) (citing *Phillips v. Gen. Mors Corp.*, Civ. A. No. 99-3423, 2000 WL 1285380, at *5 (E.D. La. Sept. 12, 2000)).

Adriatic Marine's Motion to Strike is granted, Defendant's Motion to Supplement is denied.

## IV.    CONCLUSION

Based on the foregoing analysis, **IT IS HEREBY ORDERED** that the Motion to Strike Expert Opinions Regarding Pre-Incident Earning Capacity, filed by Adriatic Marine, LLC,[105] is **GRANTED.**  Glenn Hebert shall be precluded from testifying at trial regarding Defendant's pre-incident earning capacity, which he calculated to be $85,684, and G. Randolph Rice, Ph.D. shall be precluded from testifying at trial regarding Defendant's pre-incident earning capacity and Defendant's past and future lost wages.  **IT IS FURTHER ORDERED** that the Motion to Supplement Expert Reports of Glenn Hebert and G. Randolph Rice, Ph.D.,[106] filed by Roland Harrington, is **DENIED.**

New Orleans, Louisiana, February 13, 2020.


**WENDY B. VITTER**
**United States District Judge**

---

[105] R. Doc. 28.
[106] R. Doc. 51.