# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ADRIATIC MARINE, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-2440-WBV-KWR** |
| **ROLAND HARRINGTON** | **SECTION: D (4)** |

## <u>ORDER AND REASONS</u>

Before the Court is a Motion for Partial Summary Judgment on Jones Act Negligence and Unseaworthiness, filed by Adriatic Marine, LLC ("Adriatic Marine").[1] The Motion is opposed,[2] and Adriatic Marine has filed a Reply.[3] After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This Jones Act case arises out of an alleged slip and fall aboard the M/V ADRIATIC, a vessel owned by plaintiff, Adriatic Marine, LLC ("Adriatic Marine"). Roland Harrington ("Defendant"), claims that he was injured on or about March 18, 2018, while working as an unlicensed engineer for Adriatic Marine aboard the M/V ADRIATIC.[4] Defendant alleges that after cleaning inside the vessel's bilge around the port main engine, he stepped out of the bilge and lost his footing, causing him to fall and hit his lower back on an angle iron.[5] No one witnessed Defendant's alleged

---

[1] R. Doc. 26.
[2] R. Doc. 30.
[3] R. Doc. 45.
[4] R. Doc. 1 at ¶ 6.
[5] *Id*. at ¶ 8.

accident. Defendant did not report the injury until March 26, 2018, which is when he completed an Incident Report. According to the Incident Report, the alleged injury occurred at 9:00 a.m. on March 18, 2018.[6]

Adriatic Marine claims that on June 12, 2018, it received correspondence from Defendant's counsel, asserting that Defendant had been injured aboard the M/V ADRIATIC on March 18, 2018, and requesting maintenance and cure benefits.[7] Adriatic Marine alleges that it immediately initiated maintenance and cure benefits in good faith, and began an investigation into the alleged incident.[8] According to the Complaint, Defendant provided Adriatic Marine with information that Defendant had been under the care of Dr. Neil Romero, who had recommended that Defendant undergo surgery. As part of its investigation into the alleged incident, Adriatic Marine requested that Defendant undergo an independent medical examination by Dr. Ralph Katz who, after the examination, disagreed with Dr. Romero's request for approval of a 2-level decompression and fusion surgical procedure. Based upon Dr. Katz's opinion, Adriatic Marine denied the requested surgical procedure.[9]

After conducting its investigation into the alleged accident, Adriatic Marine contends that Defendant was not involved in an accident aboard the M/V ADRIATIC on March 18, 2018, and/or that Defendant did not sustain any injury while in service of any Adriatic Marine vessel.[10] Adriatic Marine further alleges that Defendant

---

[6] R. Doc. 26-7.
[7] R. Doc. 1 at ¶ 14.
[8] *Id.* at ¶ 15.
[9] *Id.* at ¶ 17.
[10] *Id.* at ¶ 18.

willfully and knowingly concealed his pre-existing medical conditions and/or failed to disclose them to Adriatic Marine, including, but not limited to, prior issues and injuries to his back.[11]  As such, Adriatic Marine claims that Defendant is not entitled to maintenance and cure benefits.[12]  On March 18, 2019, Adriatic Marine filed a Complaint for Declaratory Judgment in this Court, seeking a declaration that it is not responsible for maintenance or cure benefits or, conversely, a determination regarding past and future liability for maintenance and cure generally.[13]

On April 11, 2019, Defendant filed an Answer and Counterclaim to Adriatic Marine's Complaint, asserting that his accident and injuries were caused solely by Adriatic Marine's negligence and/or the unseaworthiness of the vessel.[14]  Defendant also asserted a claim for maintenance and cure benefits from the date of his injury until he reaches full recovery or maximum medical improvement.[15]  Defendant claims that Adriatic Marine is liable to him under the Jones Act, 46 U.S.C. § 30104, because Defendant was performing his duties as a seaman aboard the M/V ADRIATIC at the time of the accident.[16]  Defendant also asserted a claim for punitive damages.[17]

On December 30, 2019, Adriatic Marine filed the instant Motion, seeking summary judgment on Defendant's counterclaims for Jones Act negligence and

---

[11] *Id.* at ¶ 19.
[12] *Id.* (citing *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166 (5th Cir. 2005); *Jauch v. Nautical Services, Inc.*, 470 F.3d 207 (5th Cir. 2006); *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547 (5th Cir. 1968)).
[13] R. Doc. 1 at ¶ 22.
[14] R. Doc. 7 at pp. 6-9.
[15] *Id.* at p. 9, ¶ IX.
[16] *Id.* at p. 6, ¶ III.
[17] *Id.* at pp. 9-10, ¶ XI.

unseawothiness under general maritime law.[18]  Adriatic Marine contends that Defendant's counterclaims must be dismissed because Defendant cannot establish or offer any evidence showing that an accident occurred, that Adriatic Marine was negligent under the Jones Act, or that the M/V ADRIATIC was unseaworthy.  First, Adriatic Marine asserts that Defendant cannot establish how his alleged accident occurred, or if an accident occurred, because he testified during his deposition that he does not know how the accident happened, stating only that he slipped while stepping on a pipe in the bilge.  Adriatic Marine points out that the unwitnessed accident is entirely unsubstantiated, as there is no evidence that there was oil or grease on the pipe in the bilge prior to Defendant allegedly stepping onto it.  Adriatic Marine notes that the Incident Report, which Defendant admitted he had read and understood when he signed it, makes no mention of oil or grease, and provides only that Defendant was "stepping out" of the bilge "and lost his footing."[19]  Adriatic Marine also points out that Defendant testified that he does not know what caused his alleged accident.[20]

Adriatic Marine next argues that, even if Defendant can establish that the accident occurred, he cannot establish that Adriatic Marine failed to provide him a reasonably safe place to work, as required under the Jones Act.[21]  Adriatic Marine points out that, "The mere fact that an accident occurs or that an injury is sustained

---

[18] R. Doc. 26.
[19] R. Doc. 26-1 at p. 9 (*citing* R. Docs. 26-6 & 26-7).
[20] R. Doc. 26-1 at p. 9 (*citing* R. Doc. 26-3 at p. 12).
[21] R. Doc. 26-1 at pp. 10-11 .

does not prove negligence under the Jones Act."[22]  Adriatic Marine argues that there was nothing inherently unsafe about having to clean a bilge, which is a task that Defendant had previously performed without incident.[23]  Adriatic Marine compares the facts of this case with those in *Jones v. United States*, wherein the Fifth Circuit affirmed the district court's decision granting summary judgment against a Jones Act seaman who allegedly slipped and fell on a hatch cover.[24]  Adriatic Marine points out that the plaintiff in *Jones* testified that he did not see what caused him to slip, but that he believed he slipped on grease on the deck of the vessel.  In granting summary judgment on the plaintiff's Jones Act negligence and unseaworthiness claims, the district court in *Jones* noted that the plaintiff reported only that he lost his balance and fell, but did not attribute his loss of balance to any particular cause.[25]

Adriatic Marine argues that the same is true here, as Defendant has only alleged that he fell without identifying what may have caused him to fall.  Adriatic Marine notes that Defendant testified that he did not think that Adriatic Marine did anything wrong to cause his alleged accident.[26]  Adriatic Marine points out that when Defendant was asked what Adriatic Marine did wrong to cause his alleged accident, he said "nothing" and testified that it was just a "freak accident:"

> Q: Okay.  What do you think -- you know, what do you think
> that Adriatic did wrong to cause your accident?
>
> A: Nothing.

---

[22] *Id*. at p. 10 (citing *Taylor v. Bisso Towboat Co.*, Civ. A. No. 07-3116, 2009 WL 2707452 (E.D. La. Aug. 25, 2009)).

[23] R. Doc. 26-1 at p. 11; *See Id*. at pp. 9-10 (*citing* R. Doc. 26-5).

[24] R. Doc. 26-1 at p. 11 (citing *Jones*, 936 F.3d 318, 320 (5th Cir. 2019)).

[25] R. Doc. 26-1 at p. 11 (quoting R. Doc. 26-9 at p. 10) (quotation marks omitted).

[26] R. Doc. 26-1 at p. 5.

> Q: Okay. It was just an accident?
> A: It was just an accident.
>
> Q: And you told me earlier that you didn't -- you know, there was no -- no grease or anything like that on the pipe?
>
> A: Yea. There was nothing on the pipe. It was just one of those -- what you call a freak accident.[27]

Adriatic Marine asserts that there is no evidence that Defendant was required to perform an unsafe task, that the pipe in the bilge was defective or that there was oil or grease on the pipe. Moreover, Defendant testified during his deposition that there was no oil or grease on the pipe right before he stepped onto it.[28] Like in *Jones*, Adriatic Marine argues that there is no causal link between Defendant's alleged injury and Adriatic Marine's potential negligence and liability.[29] Adriatic Marine maintains that Defendant cannot explain or offer competent summary judgment evidence regarding what caused his alleged accident, and that mere speculation or unsubstantiated allegations at this point, after discovery has closed, are insufficient to defeat summary judgment with respect to causation.[30]

Adriatic Marine further asserts that there is no competent summary judgment evidence that it knew or should have known of an unsafe condition related to cleaning the bilge.[31] Adriatic Marine claims that in a Jones Act case, there must be some evidence from which a jury can infer that the unsafe condition existed and that the

---

[27] *Id.* (*quoting* R. Doc. 26-3 at p. 16).
[28] R. Doc. 26-1 at p. 11.
[29] *Id.* at p. 12.
[30] *Id.* at pp. 12-13.
[31] *Id.* at p. 13.

owner either knew or, in the exercise of due case, should have known of it.[32] Adriatic

Marine argues that Defendant did not voice any concerns or issues with having to

clean the bilge, and even testified that, "I knew what I needed to do to get the job

done."[33] Adriatic Marine claims that the uncontradicted evidence shows there was

no leak or issue with the bilge prior to Defendant's alleged accident. Even if there

was a leak or issue with the bilge, Adriatic Marine asserts Defendant cannot offer

any competent summary judgment evidence establishing that Adriatic Marine knew

or should have known of an unsafe condition related to cleaning the bilge.

Finally, Adriatic Marine argues that Defendant cannot establish

unseaworthiness of the underlying vessel, as Defendant cannot establish that the

M/V ADRIATIC was not reasonably fit for its intended use and has offered no

evidence in support of this contention.[34] Adriatic Marine asserts that there is no

evidence that the bilge or the pipe upon which Defendant stepped were not

reasonably fit for their intended use, nor is there any evidence that the bilge, the pipe

or the M/V ADRIATIC were not functioning properly. According to Adriatic Marine,

the undisputed evidence establishes that the M/V ADRIATIC, its engines and the

bilge were all working, without incident or issue, at the time of Defendant's alleged

accident.[35] Adriatic Marine maintains that Defendant cannot offer any competent

summary judgment evidence establishing that the M/V ADRIATIC was unseaworthy,

---

[32] *Id.* (quoting *Perry v. Morgan Guar. Tr. Co. of N.Y.*, 528 F.2d 1378, 1379 (5th Cir. 1976)) (quotation marks omitted).
[33] R. Doc. 26-1 at p. 13 (*quoting* R. Doc. 26-3 at p. 15).
[34] R. Doc. 26-1 at p. 14.
[35] R. Doc. 26-1 at p. 15.

or that any unseaworthy condition was a substantial factor in causing his alleged accident and injuries. As such, Adriatic Marine claims that it is entitled to summary judgment on Defendant's counterclaims for Jones Act negligence and unseaworthiness.

Defendant opposes the Motion, asserting that Adriatic Marine is not entitled to partial summary judgment because there are several contested issues of fact, including whether he slipped on oil that leaked from the bilge that he was cleaning and why someone who Adriatic Marine's Captain thought was too large to get into the bilge to clean it was assigned the task without an assistant.[36] Contrary to Adriatic Marine's assertion, Defendant claims that the bilge cleaning operation that was underway at the time of his accident was only the second time that he had been assigned that task, noting that during his prior assignment, the vessel was docked and he was provided with a helper.[37] Defendant asserts that because no one was assigned to help him, he had to physically remove the steel deck plates and get down into the bilge area, depicted on page three of Adriatic Marine's Memorandum in Support of the instant Motion.[38] Defendant claims that, due to his large stature, it was difficult to get into the bilge area and, because of that confinement, he was unable to look at his shoes prior to attempting to exit the bilge. Citing to his own deposition testimony, Defendant explains that he stepped on some dry rags or absorbent pads before stepping on a pipe to exit the bilge, "in case that was oil base on my boots, the

---

[36] R. Doc. 30 at pp 4-5.
[37] *Id.* at pp. 1-2 (*citing* R. Doc. 30-2 at p. 1).
[38] R. Doc. 30 at p. 2.

rags could have wiped them off."[39]  Although Defendant testified that he did not see oil on the pipe as he was attempting to exit the bilge, Defendant contends that, "Of course, the most likely and obvious reason that Harrington slipped would be oil on his shoes since he was cleaning oil in the bilge while wearing his shoes and it likely transferred to his shoes from the inside of the bilge."[40]  Defendant argues that it is up to the trier of fact to determine whether he slipped on oil after hearing the evidence and assessing the credibility of the witnesses at trial.

Defendant further argues that Adriatic Marine was negligent in failing to provide a safe place to work, failing to warn him of the condition of the bilge and failing to provide him with assistance in cleaning the bilge.[41]  Although Defendant cannot testify that he saw oil on his shoes, he claims that he had been standing and kneeling in oil for an extended period of time while cleaning the bilge before trying to climb out of the compartment.  While Defendant did not see oil on the pipe he had used to exit the bilge, he argues that, "the Court could reasonably conclude from this evidence alone that the oil had to have been on Harrington's shoes."[42]  Defendant contends that Adriatic Marine's reliance upon *Jones v. United States* is misplaced because Defendant knew there was oil in the bilge and, unlike in *Jones*, there is no contradictory testimony regarding oil in the bilge other than Captain Christopher Blake Calhoun's speculative testimony that there was no oil leak in the bilge because

---

[39] *Id.* at pp. 2-3 (*quoting* R. Doc. 30-2 at p. 4).
[40]  R. Doc. 30 at p. 5.
[41] R. Doc. 30 at pp. 7, 9.
[42] *Id.*

it would have been documented in the vessel logs.[43]  Defendant argues that Capt. Calhoun's testimony is contradicted by how Adriatic Marine handled at least one other oil leak on May 20, 2018, where the engine room log shows that oil was cleaned up but the vessel log makes no mention of an oil leak.[44]

With respect to his unseaworthiness claim, Defendant argues that Adriatic Marine forced him to engage in an unsafe method of work by not providing him with assistance or other accommodation to allow him to safely clean the bilge.[45] Alternatively, Defendant asserts that Adriatic Marine should have assigned the task to someone who it deemed more physically suitable and able to safely clean the bilge. Defendant maintains that there is evidence from which a trier of fact could conclude that Adriatic Marine was negligent and its vessel unseaworthy, and that Adriatic Marine has failed to demonstrate that there are no genuine issues of material fact in dispute.  As such, Defendant argues the Motion should be denied.

In response, Adriatic Marine maintains that summary judgment is warranted because Defendant has failed to come forward with any competent summary judgment evidence to establish how his accident occurred, that Adriatic Marine knew or should have known of an unsafe condition related to cleaning the bilge, or that the M/V ADRIATIC was not reasonably fit for its intended use.[46]  Adriatic Marine asserts that Defendant has merely offered speculation and unsubstantiated assertions regarding how he slipped, which are insufficient to create a genuine issue of fact

[43] R. Doc. 30 at p. 7 (citing *Jones*, 936 F.3d 318 (5th Cir. 2019)).
[44] R. Doc. 30 at p. 4 (*citing* R. Docs. 30-11 & 30-12).
[45] R. Doc. 30 at p. 8.
[46] R. Doc. 45 at pp. 1, 5, 6.

regarding liability or unseaworthiness. Adriatic Marine points out that Defendant has failed to provide any evidence from any expert or fact witness that it was negligent, that Defendant was required to perform an unsafe task or that the pipe was defective.[47] Adriatic Marine further argues that several of Defendant's arguments are contradicted by his own admissions and deposition testimony. For instance, Defendant's admission that he cannot testify that he saw oil on his shoes undercuts his argument that the accident occurred as a result of oil on his shoes.[48] Likewise, Defendant's assertion that Adriatic Marine should have suggested that he check his shoes for oil ignores Defendant's admission that, immediately before stepping out of the bilge, he stepped on some dry, absorbent pads and rags that he had brought into the bilge.[49] As such, Adriatic Marine maintains that summary judgment is warranted.

## II. LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[50] When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making

---

[47] *Id.* at p. 3.

[48] *Id.* (*citing* R. Doc. 30 at p. 7).

[49] R. Doc. 45 at p. 4 (*citing* R. Doc. 30-1 at p. 3, ¶ 17).

[50] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

credibility determinations or weighing the evidence." [51] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[52] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[53]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[54] The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[55] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[56] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to

---

[51] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[52] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[53] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[54] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

[55] *Id.* at 1265.

[56] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[57]

Additionally, in a nonjury case, "a district court has somewhat greater discretion to consider what weight it will accord the evidence."[58] "When deciding a motion for summary judgment prior to a bench trial, the district court 'has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result.'"[59]

## III.   ANALYSIS

### A. Adriatic Marine is entitled to summary judgment on Defendant's counterclaim for Jones Act negligence.

Under the Jones Act, "A seaman injured in the course of employment . . . may elect to bring a civil action at law . . . against the employer."[60] "A seaman is entitled to recovery under the Jones Act . . . if his employer's negligence is the cause, in whole or in part, of his injury."[61] According to the Fifth Circuit, "The standard for causation in Jones Act cases is 'very light.'"[62] The seaman can show causation if his employer's negligence played any part, even the slightest, in producing the injury.[63] As explained by the Fifth Circuit, "In Jones Act cases, there must be some evidence from which a jury can infer that the unsafe condition existed and that the owner either

---

[57] *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (*quoting* Fed. R. Civ. P. 56(e)).

[58] *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010) (quotation omitted).

[59] *Id*. (quoting *In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991)).

[60] 46 U.S.C. § 30104.

[61] *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997).

[62] *O'Neill v. Seariver Maritime, Inc.*, 246 Fed.Appx. 278, 280 (5th Cir. 2007) (quoting *Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 548 (5th Cir. 1987)).

[63] *Jones v. United States*, 936 F.3d 318, 322 (5th Cir. 2019) (quoting *Gautreaux*, 107 F.3d at 335)) (quotation marks omitted).

knew or, in the exercise of due care, should have known of it."[64] The Jones Act does not impose upon employers a higher duty of care than that required under ordinary negligence. The standard of care is that of a reasonable person under the circumstances.[65] Additionally, a seaman is obligated under the Jones Act to act with ordinary prudence under the circumstances, which includes not only his reliance upon his employer to provide a safe work environment, but his own experience, training or education.[66]

Here, Defendant's negligence claim is based upon Adriatic Marine's purported failure to provide a reasonably safe place to work, its failure to warn Defendant of the condition of the bilge and its failure to provide Defendant with assistance in cleaning the bilge. Defendant asserts that Adriatic Marine's failure to provide him with assistance cleaning the bilge and the presence of oil in the bilge of the M/V ADRIATIC created an unsafe condition.[67] Defendant, however, has not provided any evidence that he requested assistance in cleaning the bilge on March 18, 2018. Although Defendant's deposition testimony provides evidence that there was oil in the bilge that he was assigned to clean on March 18, 2018,[68] there is no evidence that the oil created an unsafe condition or that it caused his alleged injury. Defendant testified that when he first looked into the bilge, before getting into it to do the cleaning, he saw oil and water.[69] Defendant testified that he used a shop vac, as well as rags and

[64] *Perry v. Morgan Guar. Tr. Co. of N.Y.*, 528 F.2d 1378, 1379 (5th Cir. 1976).
[65] *Jones v. United States*, 326 F. Supp. 3d 262, 268 (E.D. La. 2018) (quoting *Gautreaux*, 107 F.3d at 339) (quotation marks omitted).
[66] *Gautreaux*, 107 F.3d at 339.
[67] R. Doc. 7 at p. 7; R. Doc. 30 at p. 7.
[68] R. Doc. 26-3 at pp. 9-11.
[69] *Id*. at pp. 9-10.

absorbent pads, to soak up the oil and water "until it was good enough for me to get in there."[70]  As Adriatic Marine points out, Defendant specifically testified that, before stepping on a pipe to get out of the bilge, he looked at the pipe and it did not have any oil on it.[71]  Defendant also testified that there was nothing on the pipe that may have caused him to slip.[72]  Defendant further testified that he does not know if there was any oil on his shoes because he did not look at his shoes before stepping on the pipe.[73]  However, Defendant testified that he stepped on some absorbent pads before stepping onto the pipe, "So in case that [sic] was oil base on my boots, the rags could have wiped them off -- . . . . -- before I tried stepping up."[74]

Defendant's March 26, 2018 Incident Report  also makes no mention of any oil or water at the site of the alleged accident.  The Incident Report, which was prepared eight days after the alleged accident, merely states that, "After he finished cleaning he was stepping out and lost his footing.  Causing him to slip and hit his lower back on the angle iron."[75]  According to the evidence submitted by Adriatic Marine, Defendant testified that after he fell, he laid on the floor for about 15 minutes before getting up and walking down the hall to the back deck of the vessel.[76]  Defendant has not pointed the Court to any deposition testimony or other evidence indicating that there were oil footprints where Defendant walked following the incident.  The Court

---

[70] *Id.*
[71] R. Doc. 26-3 at pp. 12-13.
[72] *Id.* at p. 13.
[73] *Id.* at pp. 11-12.
[74] *Id.* at p. 12.
[75] R. Doc. 26-7 at p. 1.
[76] R. Doc. 26-3 at pp. 13-14.

finds that Defendant was clearly able to investigate why he slipped, as he could have examined the pipe and his shoes after he fell.

It was not until some time after the alleged accident, however, that Defendant concluded that, "he slipped and fell while cleaning a fuel spill in the bilge."[77] Defendant asserts that, "the most likely and obvious reason that Harrington slipped would be oil on his shoes since he was cleaning oil in the bilge while wearing his shoes and it likely transferred to his shoes from the inside of the bilge."[78] Defendant further contends that, "the Court could reasonably conclude from this evidence alone that the oil had to have been on Harrington's shoes."[79] These assertions, however, are pure speculation on Defendant's part. As Adriatic Marine correctly points out, Defendant has failed to come forward with any competent summary judgment evidence to show that his alleged slip and fall was caused by oil from the bilge. Instead, Defendant has offered only conclusory allegations that are unsubstantiated by any evidence in the record. While this Court is cognizant of the Supreme Court's instruction that "entirely circumstantial" evidence can prove a Jones Act claim,[80] there must also be some evidence to complete "[t]he path from worker injury to employer liability."[81] Moreover, the Fifth Circuit has made clear that a non-moving party cannot defeat summary judgment with speculation, conclusory allegations,

---

[77] R. Doc. 7 at p. 7.
[78] R. Doc. 30 at p. 5.
[79] *Id*. at p. 7.
[80] *See Jones v. United States*, 936 F.3d 318, 322 (5th Cir. 2019) (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 508, 77 S.Ct. 443, 449, 1 L.Ed.2d 493 (1957)).
[81] *Jones*, 936 F.3d at 322-23 (quoting *Huffman v. Union Pacific R.R.*, 675 F.3d 412, 426 (5th Cir. 2012)).

unsubstantiated assertions, or only a scintilla of evidence.[82] Accordingly, Defendant's

unsubstantiated and conclusory assertions that he slipped on oil are not sufficient to

raise a genuine dispute as to causation.[83]

Likewise, Defendant has not presented any summary judgment evidence to

show that Adriatic Marine was negligent for failing to assign another crewmember to

assist him in cleaning the bilge. Although not a model of clarity, Defendant seems to

argue that Adriatic Marine should have provided him with assistance in cleaning the

bilge due to his large stature.[84] As Adriatic Marine points out, however, the fact that

Capt. Calhoun was "astonished" that Defendant could fit in the bilge to clean it, given

his size,[85] does not satisfy Defendant's burden of proof on a Jones Act negligence

claim. The undisputed evidence shows that Defendant underwent a Job Safety

Analysis before he began cleaning the bilge, during which he discussed with Capt.

Gary Storie the potential "slips, trips, and falls" risk associated with the task.[86]

Defendant testified that he did not misunderstand anything that was discussed

during the Job Safety Analysis and that he did not ask Capt. Storie any questions

about how to specifically perform the task of bilge cleaning because he "knew what I

needed to do to get the job done."[87] In his discovery responses, Defendant also

admitted that he had testified that he knew how to perform the task of bilge cleaning

---

[82] *Lawrence v. Fed. Home Loan Mortg. Corp.,* 808 F.3d 670, 673 (5th Cir. 2015) (quoting *Likens v. Hartford Life & Accident Ins. Co.*, 688 F.3d 197, 202 (5th Cir. 2012)); *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[83] *See Lawrence v. Fed. Home Loan Mortg. Corp.,* 808 F.3d 670, 673 (5th Cir. 2015).
[84] R. Doc. 30 at pp. 2-3, 5, 6-7.
[85] R. Doc. 26-6 at p. 3.
[86] R. Doc. 30-1 at pp. 1-2, ¶¶ 4-5; R. Doc. 26-3 at p. 14.
[87] R. Doc. 26-3 at p. 15.

and that he did not need any specific instructions from Capt. Storie.[88]  There is no evidence before the Court indicating that Defendant ever voiced any concerns or issues with having to clean the bilge by himself.

There is also no evidence before the Court that Defendant asked for assistance in cleaning the bilge on March 18, 2018, or that anyone instructed Defendant to stand in the bilge to perform the task.  In fact, Adriatic Marine has submitted evidence that appears to show that Defendant cleaned the bilge by himself without incident on March 14, 2018, March 15, 2018, March 16, 2018, and March 17, 2018 – the four days preceding his alleged injury.[89]  Defendant failed to address this evidence in his opposition brief.  Instead, Defendant cited his own deposition testimony as evidence that this was only the second time that he was assigned to clean the bilge and that he was previously provided with a helper to perform the task.[90]  The testimony cited by Defendant, however, does not support his position.  Nonetheless, the evidence submitted by Adriatic Marine demonstrates that Defendant did testify that he had only cleaned the bilge once before his alleged accident, and that the vessel was docked at the time of the prior cleaning.[91]  Contrary to Defendant's assertion, there is no evidence before the Court that Defendant was assisted by another crewmember during that prior bilge cleaning assignment.

Based on the foregoing, the Court finds that Defendant has not offered any summary judgment evidence to show Adriatic Marine knew or should have known of

---

[88] R. Doc. 30-1 at p. 2, ¶ 7.
[89] R. Doc. 26-5.
[90] R. Doc. 30 at pp. 1-2 (*citing* R. Doc. 30-2 at p. 1).
[91] R. Doc. 26-3 at pp. 4-5.

an unsafe condition related to cleaning the bilge, or that Defendant's alleged slip and fall was caused by any such unsafe condition or by Adriatic Marine's failure to assign another crewmember to assist Defendant in cleaning the bilge. Instead, Defendant has offered only speculation and unsubstantiated allegations, which are insufficient to create a genuine dispute regarding Defendant's Jones Act negligence counterclaim. Defendant has failed to direct the Court to any evidence connecting Defendant's alleged slip and fall to the presence of oil on his shoes or the pipe near the bilge that he was cleaning on the M/V ADRIATIC on March 18, 2018. There is also no evidence connecting Defendant's alleged accident to the fact that Adriatic Marine did not assign another crewmember to assist him in cleaning the bilge. Without such evidence, it is not plausible to infer that oil from the bilge or the lack of assistance caused the alleged accident. However, even if a reasonable juror could draw that inference, the Court, as factfinder in this case, could not possibly draw that inference based on the evidence presented.[92] Accordingly, Adriatic Marine is entitled to summary judgment on Defendant's counterclaim that Adriatic Marine was negligent under the Jones Act.

### B. Adriatic Marine is entitled to summary judgment on Defendant's counterclaim that the M/V ADRIATIC was unseaworthy.

The Court likewise finds that Adriatic Marine is entitled to summary judgment with respect to Defendant's counterclaim that his alleged accident was caused by the unseaworthiness of the M/V ADRIATIC. Under general maritime law, "A shipowner

---

[92] *See Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010) (quotation omitted); *Jones v. United States*, 326 F. Supp. 3d 262, 270 (E.D. La. 2018).

has an absolute nondelegable duty to provide a seaworthy vessel."[93]  "For a vessel to be found unseaworthy, the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used."[94]  "In addition, the plaintiff must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy."[95]  The Fifth Circuit has explained that the standard of causation for unseaworthiness claims is more demanding than the standard applicable to Jones Act negligence claims, as it requires proof of proximate cause.[96]  To establish proximate cause in an unseaworthiness claim, "a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness."[97]

Here, Defendant's counterclaim for unseaworthiness substantially overlaps with his allegations regarding Jones Act negligence, as Defendant asserts that Adriatic Marine failed to provide a seaworthy vessel due to the presence of oil in the bilge and Adriatic Marine's failure to assign another crewmember to assist him in cleaning the bilge.[98]  It is well settled in this Circuit that a slippery surface may render a vessel unseaworthy.[99]  However, as previously discussed, Defendant has

---

[93] *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991).
[94] *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001) (citations omitted).
[95] *Id.*
[96] *Chisholm v. Sabine Towing & Transp. Co., Inc.*, 679 F.2d 60, 62 (5th Cir. 1982).
[97] *Brister*, 946 F.2d at 355 (quoting *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988)) (internal quotation marks omitted).
[98] R. Doc. 30 at pp. 6-9.
[99] *Jones v. United States*, 326 F. Supp. 3d 262, 270 (E.D. La. 2018) (citing *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 330 (5th Cir. 1977) (affirming district court's finding that "slippery condition

failed to direct the Court to any evidence that raises a genuine dispute regarding whether oil in the bilge played a part – let alone a substantial part – in causing Defendant's injury. Defendant has failed to submit any evidence that the bilge or the pipe upon which he stepped were not reasonably fit for their intended use, nor has he submitted any evidence to suggest that the M/V ADRIATIC, the bilge or the pipe upon which he allegedly stepped were not functioning properly.

The Fifth Circuit has also held that a vessel can be rendered unseaworthy by an inadequate, understaffed or ill-trained crew.[100] Here, Defendant argues that the A/V ADRIATIC was unseaworthy because he was not provided with assistance or some other accommodation to allow him to safely perform the assigned task of cleaning the bilge.[101] As Adriatic Marine points out, however, the mere fact that Capt. Calhoun testified that he was astonished that Defendant could climb into the bilge, given his size, is insufficient to establish that Adriatic Marine provided an inadequate, understaffed or ill-trained crew for the M/V ADRIATIC. Defendant has failed to direct the Court to any competent summary judgment evidence that Adriatic Marine's failure to assign another crewmember to assist him in cleaning the bilge

---

rendered the deck unreasonably safe for its intended use"), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 339 (5th Cir. 1997); *Levine v. Zapata Protein (USA), Inc.*, 961 F. Supp. 942, 945 (E.D. La. 1996) (finding that vessel was unseaworthy, at least in part, because "the stairs were too steep and the threads of the steps were slippery due to their worn condition and lack of a skid-proof surface"); *Courville v. Cardinal Wireline Specialists, Inc.*, 775 F. Supp. 929, 936 (W.D. La. 1991) (finding that vessel was "unseaworthy because of the absence of non-skid tape or some other appropriate skid resistent [sic] surface on the steep steps between the galley and wheelhouse")).

[100] *Glaze v. Higman Barge Lines, Inc.*, 611 Fed.Appx. 227, 228 (5th Cir. 2015) (quoting *Marceaux v. Conoco, Inc.*, 124 F.3d 730 (5th Cir. 1997), *superseded on other grounds by rule*, Fed. R. Evid. 103(a), *as recognized in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002)) (internal quotation marks omitted).

[101] R. Doc. 30 at pp. 8-9.

played any part, much less a substantial part, in causing his alleged injury. Accordingly, the Court finds that Adriatic Marine is entitled to summary judgment on Defendant's counterclaim for unseaworthiness under general maritime law.

Based on the foregoing, the Court finds that Adriatic Marine is entitled to partial summary judgment with respect to Defendant's counterclaims for Jones Act negligence and unseaworthiness under general maritime law. The counterclaims are, therefore, dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Adriatic Marine, LLC's Motion for Partial Summary Judgment on Jones Act Negligence and Unseaworthiness[102] is **GRANTED**, and Roland Harrington's counterclaims for Jones Act negligence and unseaworthiness under general maritime law are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, March 3, 2020.

_Wendy B Vitter_
**WENDY B. VITTER**
**United States District Judge**

---

[102] R. Doc. 26.